UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHANDI OLIVARES, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 4:17-cv-0043-RDP |
| } | |
| NANCY A. BERRYHILL, Acting } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**MEMORANDUM DECISION**

Plaintiff Shandi Olivares ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. *See* 42 U.S.C. §§ 405(g) and 1383(a). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income on August 21, 2013. (R. 9, 78). In the applications Plaintiff alleges disability beginning on January 10, 2013. (R. 157). Both Plaintiff's SSD and SSI applications were initially denied by the Social Security Administration ("SSA"). (R. 78-93). Plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") Jerome L. Munford on April 29, 2015 in Gadsden, Alabama. (R. 31-77, 109-11). In his decision dated August 21, 2015, ALJ Munford determined that Plaintiff had not been under disability as defined by the Social Security Act from January 10, 2013 through the date of the decision. (R. 26). After the Appeals

1

Council denied Plaintiff's request for review of the ALJ's decision (R. 1-4), the ALJ's decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II. Facts

Plaintiff was thirty (30) years old at the time the ALJ issued his decision, and attended school through the tenth grade. (R. 26, 38, 164, 189). Her previous work experience includes employment as a fast food worker, a cashier-checker, a poultry laborer, and most recently a housekeeper. (R. 70, 197-203). Plaintiff claims disability due to a back injury and severe migraines. (R. 188).

Plaintiff's back injury occurred on January 10, 2013. According to medical records from the Gadsden Regional Medical Center, she "slipped on wet steps and went bouncing down several of them, now has severe pain to lower and mid back, left hip and left leg pain, worse in upper leg, denies toe, no neck pain. Symptoms came on suddenly. Symptoms are present now." (R. 41, 309). She was diagnosed with acute lumbar strain and contusion to the proximal left lower extremity, left hip, left knee, and left foot and was prescribed medication for pain and muscle spasms. (R. 309-15). Before she was discharged, X-rays of Plaintiff's lumbosacral and thoracic spine were taken. (R. 326, 328, 531). Those X-rays revealed "moderate degenerative thinning of the L5-S1 disc" and "scoliosis of the thoracic spine" with no evidence of fracture. (R. 326, 328, 535). An X-ray was also taken of Plaintiff's left femur, which revealed "chronic degenerative joint disease, mild at the knee and less at the hip" but "no acute bony finding." (R. 330, 533).

Plaintiff followed-up with general practitioner Dr. Ochuko Odjegba on March 29, 2013 at the Canterberry Family Practice Center, complaining of worsening low back pain with "shooting pains in mid lumbar spine with leg weakness when walking [and] numbness and tingling of right

calf and great toe." (R. 333). She was prescribed additional medications for pain and was referred to radiology for diagnostic testing of her lumbar spine. (R. 335, 382). She returned to the Center on April 11, 2013 with no improvement of the back pain. (R. 337, 384). She was diagnosed with an upper respiratory infection and medications for the back pain were increased. (R. 339, 386).

Although Plaintiff had been referred to radiology for an MRI of her lumbar spine, when she visited Dr. Odjegba on May 29, 2013 she reported that she had not had the MRI because she did not have the money. (R. 335, 382, 388). She rated her back pain a 9/10 and stated that she was not able to leave bed on some days, the pain was worse with activity and radiated to both feet, and she experienced numbness and tingling in her toes. (R. 388). On physical exam, it was noted that Plaintiff experienced tenderness at the lumbar spine area. (R. 390). She was diagnosed with chronic lumbago with radiculopathy from nerve compression. (R. 390). She was referred to a neurosurgeon at the UAB Kirklin Clinic and was prescribed additional pain medications. (R. 390).

Plaintiff saw Dr. Odjegba again on June 26, 2013 presenting with improved back pain, rating it a 4/10. (R. 345, 347, 392). Plaintiff asked for pain medication refills and asked for diet pills. (R. 345). She was advised to use the pain medications for the chronic lumbago only as needed. (R. 394). She returned to Dr. Odjegba on August 1, 2013, having lost some weight and complaining of persistent lower back pain rated 5/10. (R. 349, 396). She described that the "pain has radiated to the right foot, right thigh, and right buttock. The patient describes the pain as numbness and shooting." (R. 349). All of her prescriptions were refilled. (R. 352).

On August 30, 2013 Plaintiff returned to the Family Practice Center and indicated that she "continues to have severe shooting pains in lower back, with bilateral leg weakness. Makes it difficult to work." (R. 353, 400). She rated her back pain a 7/10 yet had appropriate mood and affect and was advised to continue with her current medications without change. (R. 355, 402).

3

On October 15, 2013 she visited again with a chief complaint of weight gain and a secondary issue of having trouble sending the correct paperwork to UAB for the MRI and neurosurgical evaluation. (R. 404). Although she rated her pain as an 8/10, she again demonstrated appropriate mood and affect. (R. 406). She was advised to stop taking the weight loss drug since it was not helping her lose weight and to follow up in one month. (R. 407).

Plaintiff was back at the Family Practice Center on November 19, 2013. (R. 410). She rated her back pain 9/10 and stated that the pain "worsens spontaneously and shoots into legs causing her legs to give out. Has been unable to provide all UAB charity care paper work. Wants to pay for MRI. Continues on meds." (R. 410). An MRI of the lumbar spine was taken on November 25, 2013. (R. 364). The MRI revealed "prominent subcutaneous similar diffuse adipose changes with moderate multilevel facet DJD; disc signal changes at 4/5 and 5/1 with minor 4/5 bulging and slightly greater central bulging or very shallow HNP at 5/1; no visible canal, lateral recess, or foraminal stenosis at 5/1 or any other level is identified in no intrinsic CNS or significant paraspinal or retroperitoneal abnormalities otherwise are evidence." (R. 364). On December 10, 2013 an MRI of Plaintiff's thoracic spine was taken revealing "no significant abnormalities" and the "vertebral elements and bony structures" within normal limits. (R. 518).

Plaintiff sought treatment with Dr. James White at Northeast Alabama Neurological Services on March 10, 2014. (R. 520). At that time, Plaintiff reported constant low back pain radiating to her left leg and numbness with bilateral "burning" hip pain. (R. 520). Dr. White's plan was to "treat conservatively with at least one set of epidurals." (R. 514). Plaintiff testified that Dr. White told her that she needed surgery but was "too young" and that surgery might result in further problems with her back. (R. 42-43). Various other visits to medical professionals in

2014 resulted in diagnoses of low back pain, chronic backache, hypertension, depressive disorder, migraines,[1] and anxiety. (R. 548, 557, 573).

Dr. Sathyan Iyer evaluated Plaintiff (as requested by the SSA) on October 11, 2014. (R. 375). Plaintiff reported to Dr. Iyer that "some days she cannot get out of the bed and barely walk. Sitting, standing, bending, and climbing bother her. She saw neurosurgeon who apparently told her that she has a ruptured disc. She has not been able to take epidural shots because of lack of insurance. The neurosurgeon apparently did not recommend any surgery. She has problems with her hips. She cannot bend the left hip and the right hip bothers her some. She has a burning kind of pain over the left thigh and legs. Ankles bother her. She has problems with the neck and shoulder area." (R. 375). Dr. Iyer's conclusion was that Plaintiff "will have impairment of functions involving standing, walking, bending, lifting, pushing, pulling, overhead activities, squatting, climbing, working at heights, working around moving machinery, and sitting for long periods. She may have some impairment of functions involving handling or carrying heavy weight because of her shoulder problems. She does not have limitation of functions involving hearing and speaking." (R. 378).

## III.    ALJ Decision

Disability under the Act is determined using a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R.

---

[1] Plaintiff's migraine headaches began before her fall down the stairs. On November 22, 2006 Plaintiff presented to Riverview Regional Medical Center with an "aching, constant, throbbing" headache exacerbated by light and noise and was also noted to have contusions to her eye and right cheek. (R. 233-34, 237). Plaintiff reported that her "boyfriend beat her up" and she filed a police report. (R. 237). However, she left the emergency department before receiving any treatment. (R. 236). On August 17, 2013 Plaintiff presented to the Gadsden Regional Medical Center with headache pain rated at a 7 on a 10-point scale. (R. 282-83). She was given fluids and morphine for the pain and was discharged with her pain level 3/10. (R. 286-87). On December 5, 2014, Plaintiff reported an 8/10 for migraine pain, becoming more frequent and intense. (R. 567).

5

§ 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 404.1572. Work activity may be considered substantial even if it is part-time or if the claimant does less, gets paid less, or has less responsibility than when she worked before. 20 C.F.R. § 404.1572(a). Even if no profit is realized, work activity may still be considered gainful so long as it is the kind of work usually done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant is engaging in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b).

Second, the ALJ must determine whether the claimant has a severe medical impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, then she may not claim disability. *Id.* If the impairment is not expected to result in death, the claimant must also meet the 12-month duration requirement. 20 C.F.R. § 404.1509.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, and 404.1526. If the claimant meets or equals a listed impairment and meets the duration requirement, she will be found disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

If the claimant does not meet the requirements for disability under the third step, she may still be found disabled under steps four and five of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work notwithstanding her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, then the claimant

is deemed not disabled. *Id.* If the ALJ finds the claimant is unable to perform past relevant work, then the analysis moves to the fifth and final step of the analysis.

In the final step of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). At this point, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 10, 2013. (R. 12). The ALJ found that the claimant had the following severe impairments: small shallow herniated nucleus pulposus at the L5 level, degenerative disc disease, lumbago, radiculopathy, degenerative joint disease, migraine headaches, and morbid obesity. (R. 12). The ALJ found that Plaintiff's medically determinable mental impairments of depression and anxiety did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. (R. 16). The ALJ went on to step three of the analysis and determined that Plaintiff did not suffer from an impairment or combination of impairments that would meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 24).

At step four, the ALJ determined that Plaintiff has a RFC to perform light work, "except with no operation of hazardous machinery, no driving and no unprotected heights. She can occasionally stoop and crouch; perform no left leg pushing and/or pulling; and is limited to simple, non-complex tasks." (R. 19). Analyzing Plaintiff's RFC in conjunction with her prior work history, the ALJ determined that she maintained the RFC necessary to perform her past relevant

work as a cashier/checker as it is actually and generally performed. (R. 19-25). Based on these determinations, the ALJ concluded that Plaintiff is not disabled. (R. 26).

## IV. Plaintiff's Argument for Remand or Reversal

Plaintiff argues that the ALJ improperly evaluated Plaintiffs subjective pain testimony and did not properly weigh the testimony of the treating physician. (Pl. Br., Doc. #13 at 11-16). Each argument is considered in turn.

## V. Standard of Review

The only issues before the court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

For the reasons explained below, the court finds that the decision of the Commissioner is due to be affirmed.

### A. The ALJ Properly Assessed Plaintiff's Credibility.

Plaintiff argues that the ALJ did not properly assess her credibility in evaluating subjective complaints of disabling symptoms. (Pl. Br., Doc. #13 at 9, 12-14). It is axiomatic that Plaintiff bears the burden of establishing that she is disabled. *Green v. SSA*, 223 Fed. Appx. 915, 923 (11th Cir. 2007). In the context of this case, Plaintiff must satisfy the pain standard test adopted by the Eleventh Circuit by showing "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ determines that Plaintiff has a medically determinable impairment that could reasonably be expected to produce her pain, he must then evaluate the intensity and persistence of Plaintiff's symptoms to determine if they limit his capacity to work. 20 C.F.R. §404.1529(c)(1). The ALJ should consider all available evidence in making this determination. *Id*.

During this assessment, the ALJ is to consider Plaintiff's testimony and any inconsistency between the testimony of symptoms and any other evidence. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). If the ALJ rejects Plaintiff's testimony regarding pain, the ALJ must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Further, if proof of disability is based upon subjective evidence and a credibility determination is critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*,

67 F.3d 1553, 1561 (11th Cir. 1995). The reasons for discrediting pain testimony must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 2007). Thus, although the ALJ's "credibility determination does not need to cite 'particular phrases or formulations,' … it cannot merely be a broad rejection which is not enough to enable the district court . . . to conclude that the ALJ considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210 (citing *Foote*, 67 F.3d at 1562).

In this case, the ALJ properly articulated the pain standard. (R. 19-25). After determining that evidence exists regarding an underlying medical condition, the ALJ analyzed the intensity, persistence, and functional limiting effects of the symptoms (R. 19). The ALJ found that the objective medical evidence did not support the severity of Plaintiff's alleged pain and concluded that the statements of Plaintiff were not entirely credible. (R. 21-24).

Specifically, the ALJ considered Plaintiff's testimony of constant chronic, burning pain radiating to the legs and arms, regularly at the level of 8 to 9/10 every day. (R. 20, 41, 45-48). The ALJ also considered Plaintiff's testimony that her pain impairs her ability to focus and concentrate, as well as standing, walking, and sitting for extended periods of time, thus making her unable to work. (R. 20-21, 48-50). However, the ALJ found this testimony inconsistent with Plaintiff's own report of activities, wherein Plaintiff stated that she is able to get her children ready for school, shop weekly for food and household items as needed, help her children with homework and school projects, fold clothes while sitting, and generally spend time with the children. (R. 21-25, 210-13). Further, Plaintiff's report of activities was found to be consistent with the RFC and consistent with the opinion of Dr. Iyer, both of which were used to support the ALJ's finding. (R. 24-25). The ALJ may properly consider a claimant's daily activities as a factor in determining the credibility of pain claims. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

The ALJ also determined that the medical records were inconsistent with allegations of disabling pain and limitations. (R. 21-25). In early 2013 when Plaintiff first sought treatment from Dr. Odjegba, Plaintiff herself reported that her back pain made it difficult to work, but Dr. Odjegba himself did not opine that Plaintiff had disabling pain. (R. 22, 400-03). Prescribed non-narcotic pain medications seem to have improve the severity of Plaintiff's pain, although she denies this to be the case.[2] (R. 22, 410, 414, 429, 514). Moreover, Dr. Odjegba prescribed exercise and diet to Plaintiff when she sought his advice regarding weight loss, but did not indicate that Plaintiff had any pain or limitations that would prevent her from exercising. (R. 22, 407). And Dr. White did not recommend surgery, but rather implemented a more conservative treatment of epidurals. (R. 514). The rendering of such conservative treatments may be considered by an ALJ in resolving credibility issues against a claimant claiming disabling pain. *Sheldon v. Astrue*, 268 Fed. Appx. 871, 872 (11th Cir. 2008) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)); *Nappier v. Berryhill*, 2017 WL 2351590, No. 2:16-cv-1208-MHH at *6 (N.D. Ala. May 31, 2017) (noting that the treating physician recommended only conservative treatments and never restricted claimant's activity).

Based on the foregoing, the court finds substantial evidence supports the ALJ's decision, and the ALJ was not clearly wrong in discrediting Plaintiff's testimony. *See Jerrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (citing *Holt*, 921 F.2d at 1223) (holding that statements concerning the intensity, duration, and limiting effects of Plaintiff's symptoms were

---

[2] Although Plaintiff argues briefly that the ALJ gave little or no consideration to the alleged side effects of the medications (Pl. Br., Doc. #13 at 13-14), this argument cannot stand because none of the medical records indicate any complaints regarding side effects. (Tr. 23). Plaintiff has cited no records showing that a doctor expressed concern regarding any side effects; therefore she has failed to meet her burden to show that side effects are part of her alleged disabling condition. *See Werner v. Commissioner*, 421 Fed. Appx. 935, 938 (11th Cir. 2011) ("a claimant's failure to report side effects to her physicians is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record.").

not entirely credible because the objective medical evidence did not confirm the severity of the alleged pain arising from that condition); *Werner v. Commissioner*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it."). Plaintiff's first ground for reversal is due to be denied.

### B. The ALJ Afforded Proper Weight to the Treating Physician.

Plaintiff next contends that the ALJ erred by failing to give substantial or considerable weight to the opinion of her treating physician. Dr. Odjegba completed a physician disability confirmation for Plaintiff to receive charity care by a specialist at the Kirklin Clinic. (Pl. Br., Doc. #13 at 14; R. 21-22). In that statement, Dr. Odjegba expressed his view that Plaintiff was unable to work for two years. (*Id.*).

An ALJ's weighting of a medical source's opinion depends on three factors: (1) the medical source's relationship with the claimant, (2) the evidence the medical source presents to support his opinion, and (3) the degree of consistency between the medical source's opinion with the medical evidence in the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)(2). Under the "treating physician rule," a treating physician's opinion is entitled to substantial weight unless good cause is shown for not crediting it. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause exists when: (1) the opinion is not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (2004); *Winschel v. Comm'r*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The ALJ determined that the opinion of Dr. Odjegba that Plaintiff could not work for two years was unsupported by the doctor's own treatment records and the evaluation of Dr. White. (R.

22-23). Dr. Odjegba's opinion does not indicate "the nature and severity of the claimant's impairment(s), including symptoms, diagnosis, and prognosis, what the claimant can still do despite the impairment(s), and the physical or mental restrictions." (R. 23). That is, Dr. Odjegba made no notations indicating Plaintiff's daily activities were limited or otherwise explaining why Plaintiff is unable to work for two years. And of course, the ultimate conclusion as to disability is one which is reserved entirely for the Commissioner to make. 20 C.F.R. §§ 404.1527, 416.927; *Heppell-Libsansky v. Comm'r of Soc. Sec.,* 170 Fed. Appx. 693, 697 (11th Cir. 2006). Such a finding is an administrative decision that is dispositive of a Social Security case. *Id*. Here, the ALJ's finding is supported by substantial evidence.

For these reasons, Plaintiff's second ground for reversal is due to be denied.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed. A separate order will be entered.

**DONE** and **ORDERED** this March 14, 2018.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE